UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH B. WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:17-cv-03706-JMS-MJD |
| CORE CIVIC, | ) ) ) |
| Defendant. | ) ) |

**Order Denying Defendant CoreCivic's Motion for Summary Judgment**

Plaintiff Joseph Williams brought this civil rights action pursuant to 42 U.S.C. § 1983. He named as a defendant CoreCivic, Inc. ("CoreCivic"). Mr. Williams alleges that he suffered injury when, as a result of overcrowding and understaffing at Marion County Jail II, an inmate performed CPR on Mr. Williams after he suffered a drug overdose. CoreCivic operates Jail II and thus is responsible for the policies and practices implemented there. Mr. Williams's complaint asserts that CoreCivic exhibited deliberate indifference to his safety through its policy and practice of allowing overcrowding and understaffing at Jail II.

This civil rights action is before the Court for resolution of CoreCivic's motion for summary judgment, dkt. 39. For the reasons discussed below, the motion is **denied**.

### I. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if there is sufficient evidence from which a reasonable juror could return a verdict in favor of the non-moving party. *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative. *Montgomery v. American Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to

"scour the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 569, 572 (7th Cir. 2017) (internal quotation omitted). "Any doubt as to the existence of a genuine issue for trial is resolved against the moving party." *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II. Facts

Mr. Williams is currently incarcerated at Miami Correctional Facility. Dkt. 1 at 1. Prior to arriving at Miami, Mr. Williams was incarcerated at Marion County Jail II ("Jail II"). Dkt. 1 at 2. Mr. Williams alleges that Jail II was "grossly overcrowded" and "grossly understaffed." Dkt. 1 at 2.

On October 13, 2016, Mr. Williams overdosed on a substance he believed was heroin. *Id.* At the time of this incident, according to Mr. Williams, one correctional officer was responsible for monitoring 148 inmates, which led to Mr. Williams receiving CPR from an inmate.[1] *Id.* He sustained injuries to his ribs and sternum from the CPR. Dkt. 1 at 2-3.

The shift logs kept at Jail II indicate that, shortly before the incident, two correctional officers were posted on the south end of the fourth floor. Dkt. 40-3 at 10. Two correctional officers were also posted on the north end of the fourth floor. *Id.* at 11. When Mr. Williams overdosed, an emergency response was called to the north end of the fourth floor, and the correctional officers from the south end of the fourth floor responded to assist with lockdown and securing inmates. *Id.*

## III. Analysis

Mr. Williams brought his claim against CoreCivic, a private company that operates Jail II, rather than individuals who work at Jail II. *See* dkt. 1 at 1. Because CoreCivic acts under color of

---

[1] CoreCivic disputes Mr. William's allegation that another inmate performed CPR. Dkt. 40 at 1, n.2. However, it assumes this allegation is true for purposes of its motion for summary judgment. *Id.*

state law by contracting to perform a government function, i.e., running a correctional institution, it is treated as a government entity for purposes of 42 U.S.C. § 1983. *See Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). To state a claim against a private corporation, the plaintiff must show a constitutional violation that "was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Bd. of Cty. Comm'r of Bryan Cty, Okla. v. Brown*, 520 U.S. 397, 403 (1997) ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.").

At the time of his medical emergency, Mr. Williams was a pretrial detainee.[2] *See* dkt. 40 at 3. "[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'malicioulsy and sadistically.'" *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2475 (2015) (citing *Ingraham v. Wright*, 430 U.S. 651, 671-72, n. 40 (1977)); *Miranda v. Cty. of Lake*, 900 F.3d 335, 350 (7th Cir. 2018) (discussing the distinction between convicted prisoners and pretrial detainees). Thus, any allegation of a constitutional violation must be analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's prohibition of cruel and unusual punishment. *Miranda*, 900 F.3d at 350. To establish a constitutional violation under the Fourteenth Amendment, a plaintiff must show only that the medical care provided to him was objectively unreasonable. *Id.* at 352 (stating that "medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*").

---

[2] CoreCivic asserts that Mr. Williams was a pretrial detainee while housed at Jail II, but it fails to cite any evidence to support this proposition. Because Mr. Williams has not disputed this allegation and his rights as a pretrial detainee are at least as great as a convicted prisoner's, the Court accepts this allegation as true.

Construing Mr. Williams's complaint and deposition testimony liberally, he asserts that his constitutional right to adequate medical care during an emergent medical event was violated by CoreCivic's policy or custom of allowing Jail II to be overcrowded and understaffed. Dkt. 1 at 2-3. Specifically, he alleges that he suffered two broken ribs and a cracked sternum because a correctional officer was responsible for monitoring 148 inmates and thus asked another inmate to perform CPR on Mr. Williams when he overdosed. *Id.*

CoreCivic characterizes Mr. Williams's claim as alleging that it is liable because it has a policy or custom of allowing inmates to perform CPR on other inmates. CoreCivic cites to a portion of Mr. Williams's deposition in support of its construction of Mr. Williams's claim. *See* dkt. 40 at 2 (citing Dkt. 40-2 at 4). It then argues that it is entitled to summary judgment because it has no written policy or custom of allowing inmates to perform CPR on other inmates. Dkt. 39 at ¶ 4; dkt. 40 at 4-5.

This argument construes Mr. Williams's complaint too narrowly. As set forth above, Mr. Williams does not contend that a policy of allowing one inmate to administer CPR to another violated his constitutional rights. Rather, he asserts that CoreCivic's policy of allowing overcrowding and understaffing at Jail II caused the correctional officer to be unable to provide him adequate medical care during his medical emergency. Because the correctional officer had other responsibilities, she asked another inmate to perform CPR on Mr. Williams, causing injury to him. This characterization of Mr. Williams's claim is supported by another portion of his deposition testimony wherein he agrees with CoreCivic's statement that his claim is "that there were not enough [correctional officers] at Marion County Jail II, on October 13, 2016. And as a direct result of that, another inmate participated in administering CPR to you, which resulted in

5

your injuries." Dkt. 40-2 at 5. Under this construction of Mr. Williams's claim, the lack of a policy or custom of allowing inmates to perform CPR on other inmates is immaterial.

The policy at the core of Mr. Williams's complaint is the staffing pattern for Jail II that requires two correctional officers to be posted on the north end of the fourth floor and one correctional officer to be posted on the south end of the fourth floor. *See* dkt. 40-3 at 2. Mr. Williams asserts that this policy results in one correctional officer monitoring 148 inmates. Dkt. 1 at 2. CoreCivic has presented no evidence or argument addressing Mr. Williams's factual allegation or the constitutionality of the staffing policy. Although it submitted evidence establishing that it was in compliance with this policy on the night of Mr. Williams's overdose, *see* dkt. 40-3 at 2, 5-8, 10-11, compliance with the policy is a distinct issue from whether the policy itself is constitutional. There is a lack of evidence on the latter issue. CoreCivic has not established that it is entitled to judgment as a matter of law.

## IV. Conclusion

Defendant CoreCivic's motion for summary judgment, dkt. [39], is **denied**. The Court will schedule a telephonic status conference to discuss the potential for settlement or trial.

**IT IS SO ORDERED.**

Date: 5/20/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JOSEPH B. WILLIAMS
993692
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

William A. Hahn
BARNES & THORNBURG, LLP (Indianapolis)
william.hahn@btlaw.com